ADVANCE MUSIC CORPORATION, Appellant, *v.* AMERICAN TOBACCO COMPANY et al., Respondents.

Argued March 6, 1946; decided November 21, 1946.

*Lee V. Eastman* for appellant. The complaint states a valid cause of action for damage suffered as a result of respondents' fraudulent misrepresentations. (*Cooper* v. *Weissblatt,* 154 Misc. 522; *Ultramares Corp.* v. *Touche,* 255 N. Y. 170; *State Street Trust Co.* v. *Ernst,* 278 N. Y. 104; Seavey, *Cardozo and the Law of Torts* [1938], 52 Harv. L. Rev. 372; *Morse* v. *Swits,* 19 How. Prac. 275; *Brackett* v. *Griswold,* 112 N. Y. 454; *Greene* v. *Mercantile Trust Co.,* 60 Misc. 189, 128 App. Div. 914; *Chester* v. *Dickerson,* 52 Barb. 349, 54 N. Y. 1; *Eaton, Cole & Burnham Co.* v. *Avery,* 83 N. Y. 31.)

*George W. Whiteside, Alex Craven* and *Dwight R. Collin* for respondents. The causes of action contained in the complaint are insufficient. (*International Products Co.* v. *Erie R. R. Co.,* 244 N. Y. 331; *Jaillet* v. *Cashman,* 115 Misc. 383, 202 App. Div. 805, 235 N. Y. 511; *Creedon* v. *Automatic Voting Machine Corp.,* 243 App. Div. 339, 268 N. Y. 583; *Courteen Seed Co.* v. *Hong King & S. B. Co.,* 245 N. Y. 377; *Marlin Fire Arms Co.* v. *Shields,* 171 N. Y. 384; *American Washboard Co.* v. *Saginaw Mfg. Co.,* 103 F. 281; *Innovation Ingenuities, Inc.,* v. *New York Times Company,* 161 App. Div. 929, 217 N. Y. 653; *Mosler Co.* v. *Ely-Norris Co.,* 273 U. S. 132; *Nann* v. *Raimist,* 255 N. Y. 307; *O'Connell* v. *Press Publishing Co.,* 214 N. Y. 352; *Bosi* v. *New York Herald Co.,* 33 Misc. 622, 58 App. Div. 619; *King* v. *Sun Printing & Publishing Assn.,* 84 App. Div. 310; *Mackin* v. *Becker,* 256 App. Div. 1062; *Tower* v. *Crosby,* 214 App. Div. 392.)

LOUGHRAN, Ch. J. The amended complaint in this action is attacked by motion under rule 106 of the Rules of Civil Practice for insufficiency on its face. Three separately stated causes of action are pleaded therein.

By way of inducement, the first cause makes these allegations: The plaintiff is a corporation engaged in the business of publishing musical compositions. Its revenue is chiefly derived from sales of sheet music made to the public and from licenses for use of its compositions in the entertainment field. It expends large sums of money for advertising in an effort to create a general impression that its compositions are or will be among the most popular song successes of the day. Methods employed by the plaintiff to that end include performances of its compositions by bandleaders and entertainers through the media of radio, phonograph recordings and motion pictures. Jobbers, dealers and the general public normally purchase musical compositions which are currently made popular by means of advertising of that kind. Sheet music is handled by jobbers and dealers on consignment. Premature return or other failure to promote sales thereof brings about serious loss to the publisher.

In respect of the wrong asserted by the plaintiff, the first cause of action goes on to say: The defendants — a tobacco company and an advertising concern — are the creators of a commercial coast-to-coast radio program which is broadcast each Saturday night. "A wide listening audience estimated to be in excess of fifteen million people per week is attracted to this program by reason of the constant representations * * * made by the defendants that said program consists of the rendition of the nine or ten most popular songs of the week in the relative order of their popularity based upon an extensive and accurate survey conducted throughout the nation." Weekly lists of the songs thus classified by the defendants upon their radio program are widely circulated by them, "so that the public, dealers, jobbers, motion picture companies, phonograph companies, electrical transcription companies, radio station performers and entertainers, and others, may be induced to rely upon such lists and purchase and use the music stated to be the most popular." In pursuing this course, the defendants act wantonly and without good faith. Their selections and ratings of the nine or ten most popular songs of the week "are in fact the choice or result of caprice or of other considerations foreign to a selection based on an accurate and extensive survey of the nation-wide popularity of such songs and the relative order of their popularity for the current week of such

broadcast." Songs published by the plaintiff which are among the first nine or ten most popular musical compositions of the nation are either passed over by the defendants or placed on their radio program and weekly lists in an improper order of popularity.

In respect of the damages complained of by the plaintiff, the first cause of action sets forth the following particulars: Music jobbers and dealers, bandleaders, entertainers, supervisors of radio programs, phonograph recording companies and motion picture producers in choosing songs are largely influenced by the selections and ratings which the defendants disseminate by way of their radio program and weekly lists. On that account, jobbers and dealers prematurely return songs of the plaintiff and thereby prevent distribution thereof to retail outlets for sale to the public. For the same reason, most users of music are induced to accept the songs heralded by the defendants and to neglect songs published by the plaintiff. In consequence of all this, the measures taken by the plaintiff for exploitation of its songs are frustrated; the value of its musical compositions is depreciated; its revenue is diminished; and its property rights and business prestige are impaired.

The foregoing parts of the first cause of action are incorporated by reference into the second cause of action and are there followed by the further allegation that "the aforesaid acts and representations on the part of the defendants are made with intent to injure the plaintiff." Thus in sum and substance the second cause of action constitutes a statement to this effect: The defendants are wantonly causing damage to the plaintiff by a system of conduct on their part which warrants an inference that they intend harm of that type. So read, the second cause of action is, we think, adequate in its office as a plaintiff's pleading.

In *Skinner & Company* v. *Shew & Company* [1893], (1 Ch. 413, 422) Lord Justice BOWEN said. " At Common Law there was a cause of action whenever one person did damage to another wilfully and intentionally, and without just cause or excuse ". So, in *Aikens* v. *Wisconsin* (195 U. S. 194) the court said: " It has been considered that, *prima facie,* the intentional infliction of temporal damage is a cause of action, which, as a matter of substantive law, whatever may be the form of the

pleading, requires a justification if the defendant is to escape." (p. 204, per HOLMES, J.) These broad propositions were approved by Sir FREDERICK POLLOCK as authority for his doctrine that all willful harm is actionable unless the defendant justify or excuse his conduct. (Pollock, The Law of Torts [14th ed.], 17-18.)

On the other hand, the view that all intentional wrongdoing is prima facie tortious has been rejected by other high authorities who contrariwise maintain that every plaintiff must bring his case under some accepted head of tort liability. " The only adequate answer to many claims for damages [said Sir JOHN SALMOND] is the mere *ipse dixit* of the law that no such cause of action is recognized." (Salmond on Torts [10th ed.], 15-16, note *m*.) So, Mr. P. A. Landon, as editor of the fourteenth edition of Pollock's Law of Torts, says (p. 46): " The law is to-day, as it has always been, that only that harm which falls within one of the specified categories of wrong-doing entitles the person aggrieved to a legal remedy. The categories of tort (not, of course, the categories of particular torts) are closed."

This difference over the general principles of liability in tort was composed for us in *Opera on Tour, Inc.,* v. *Weber* (285 N. Y. 348). We there adopted from *Aikens* v. *Wisconsin* (*supra*) the declaration that " *prima facie,* the intentional infliction of temporal damage is a cause of action, which * * * requires a justification if the defendant is to escape." The above second cause of action alleges such a prima facie tort and, therefore, is sufficient in law on its face. (*American Guild of Musical Artists* v. *Petrillo,* 286 N. Y. 226, 231.)

Whether the present complaint states any other separate cause of action we need not decide. For the motion of the defendants demands a dismissal of the entire pleading and must be denied under the rule that a demurrer to a declaration containing several counts should be overruled if any count is good. (*Hale* v. *Omaha National Bank,* 49 N. Y. 626; *Wheeler* v. *Connecticut Mut. Life Ins. Co.,* 82 N. Y. 543. See *Eidlitz* v. *Fischbach & Moore, Inc.,* 239 App. Div. 483, 486.) Nor need we decide anything in respect of the nature of the judgment to which the plaintiff may be entitled. It is enough that the above second cause of action states a case for relief either at law or in equity. (*Wainwright & Page* v. *Burr & McAuley,* 272 N. Y. 130.)

The justification that is required in a case like this must, of course, be one which the law will recognize (*Beardsley* v. *Kilmer*, 236 N. Y. 80; *Langan* v. *First Trust & Deposit Co.*, 293 N. Y. 604, 608. See Winfield, The Law of Tort, 2d ed., 15–21; Ames, Lectures on Legal History and Miscellaneous Legal Essays, 399 *et seq.*, and the cases in this court there cited).

The judgment of the Appellate Division should be reversed and the order of Special Term affirmed, with costs in this court and in the Appellate Division.

LEWIS, CONWAY, DESMOND, THACHER and DYE, JJ., concur.

Judgment accordingly.